IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA

v.                                                    Criminal No.: ELH-96-116

RAYMUND HARRISON,
        Defendant.

**MEMORANDUM OPINION**

Defendant Raymund Harrison,[1] the leader of a drug trafficking organization, entered a plea of guilty on November 21, 1996, to Count One of a Second Superseding Indictment, charging the offense of Racketeering, in violation of 18 U.S.C. § 1962(c).[2]  The plea was tendered pursuant to a Plea Agreement (ECF 62), in which Harrison agreed, *inter alia*, that he murdered DeShane Carter in an act of retaliation. *Id.* On February 21, 1997, Judge William M. Nickerson, to whom the case was originally assigned, sentenced Harrison to a total term of 420 months of imprisonment (35 years). *See* ECF 70 (Amended Judgment).[3]  The sentence dates to defendant's arrest on April 17, 1996.  ECF 96 ("Presentence Report" or "PSR") at 1.

Harrison, who is now self-represented, has filed a motion for compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  ECF 85 (the "Motion").  He seeks a reduction of his

---

[1] Defendant's first name is sometimes misspelled in the filings as "Raymond."

[2] Given the age of this case, electronic filing was not available during the pendency of the litigation.  The first electronic filing was not entered until October 29, 2014, with ECF 79.  Because many documents that are relevant here were not filed electronically, I recently submitted the Plea Agreement, the Presentence Report, the Judgment, and the Amended Judgment for electronic docketing.

[3] The case was reassigned to me on August 31, 2021, after the retirement of Judge Nickerson.  *See* Docket.

sentence to time served.  The Motion is supported by two exhibits.  ECF 85-1; ECF 85-2. The government opposes the Motion, ECF 92 (the "Opposition"), supported by a single exhibit.  ECF 92-1. Defendant has replied. ECF 93 (the "Reply").[4]

No hearing is necessary to resolve the Motion.  *See* Local Rule 105.6.  For the reasons that follow, I shall grant the Motion, in part. In particular, I shall reduce defendant's sentence to 366 months of incarceration.

## I.      Background

Harrison and his co-defendant, Elway Williams, were charged in a two-count indictment on March 27, 1996, with the offenses of conspiracy to distribute and possess with intent to distribute a mixture or substance containing heroin, in violation of 21 U.S.C. § 846, as well as possession with intent to distribute a mixture or substance containing heroin, in violation of 21 U.S.C. § 841(a)(1). ECF 1. A  five-count Superseding Indictment was filed on May 5, 1998. ECF 17. Harrison was charged, *inter alia*, with Racketeering, in violation of 18 U.S.C. § 1962(c), as well as murder in aid of Racketeering, in violation of 18 U.S.C. § 1959(a)(5).  Then, on October 9, 1996, a federal grand jury returned a ten-count Second Superseding Indictment (ECF 38), charging Harrison and Williams with additional crimes.

As noted, Harrison pleaded guilty to Count One of the Second Superseding Indictment, charging the offense of Racketeering, in violation of 18 U.S.C. § 1962(c).  Of relevance here, Harrison agreed that he was guilty of Racketeering Act Three, which charged the murder and conspiracy to murder DeShane Carter, and Racketeering Act Four, which charged conspiracy to distribute heroin and conspiracy to distribute cocaine. *Id.* ¶ 1. Count One carried a maximum

---

[4] The Office of the Federal Public Defender has declined to supplement the Motion or to represent Harrison.  ECF 95.

sentence of life imprisonment. ECF 62, ¶ 2. The government agreed to dismiss the remaining counts at sentencing. *Id.* ¶ 5(a).

In the Plea Agreement, the parties stipulated to the following facts, *id*. ¶ 4(a) (emphasis added):

> That between in or about 1990 until in or about 1995, Raymund Harrison associated with an enterprise known as the RUSH organization, along with Elway Williams, Anthony Green, and others. The members of the RUSH organization conducted its affairs through a pattern of racketeering activities, including acts of violence and the distribution of heroin and cocaine at locations in Baltimore, Maryland, including at Federal and Dallas Streets, Preston and Bond Streets, Luzerne and Grogan Streets, LaFayette and Chapel, LaFayette and Chester Streets, and Riggs and Stockton, among others. Amounts of heroin sold at these locations on a daily basis during the life of the conspiracy averaged at least one thousand pills per day, or ten thousand dollars worth of heroin per day, cocaine sales averaged approximately three thousand dollars per day. In connection with the conduct of the affairs of this organization, Raymund Harrison committed murder and other acts of violence in order to maintain his position in [the] organization, which was the position of overseer and enforcer, and also in order to maintain the position of the RUSH organization in the eyes of the community of rival drug organizations and of ordinary citizens who would be deterred by these acts of violence from encroaching on RUSH'S territory or informing on RUSH to the authorities. *Specifically, on October 5, 1995, Raymund Harrison murdered DeShane Carter. DeShane Carter was murdered to retaliate for the murder of Raymund Harrison's and Elway Williams' close friend and partner Anthony Green, who Harrison believed had been murdered by Carter and Anthony Jones.*

The parties also stipulated to the following application of the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"), *id.*:

> The parties agree and stipulate that the following Guideline factors apply: The Racketeering Guideline, which is contained in U.S.S.G. § 2E1.1. Because the underlying racketeering activity includes murder, the base offense level is determined by reference to U.S.S.G. [§] 2A1.1, first degree murder, and the base offense level is 43. The parties agree that it is not appropriate to apply any downward departure under Application Note 1, to U.S.S.G. § 2A1.1 because the murder was premeditated. The base offense level for Racketeering Act Four is determined by reference to U.S.S.G. § 2D1.1. The parties agree and stipulate that the base offense level for this conduct is 36, based on the distribution of between ten and thirty kilograms of heroin over the life of the conspiracy. A four-level enhancement is added pursuant to U.S.S.C. § 3A1.1 (a), because Harrison was a leader or organizer of criminal activity involving five or more persons, so the final adjusted offense level for Racketeering Act Four is 40. The defendant is entitled to

a two (2) point reduction in his base level because of his acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a)[.] The parties understand that the final level will be 41, which represents the offense level for Racketeering Act Four minus the two levels for acceptance of responsibility. The parties agree that no other sentencing enhancements or reductions, or downward departures apply.

The PSR (ECF 96) was consistent with the Plea Agreement in calculating defendant's final offense level. *Id.* ¶ 29. Regarding the offense level as to Racketeering Act Four, the PSR assigned a base level of 38, based on distribution of thirty kilograms or more of heroin. *Id.* ¶ 21. In contrast, the Plea Agreement contemplated a base offense level of 36, based on a quantity of ten to thirty kilograms. ECF 62, ¶ 4(a). However, this discrepancy is immaterial, as Harrison's total offense level was based on Racketeering Act Three, and the PSR and the Plea Agreement were consistent as to that calculation. In particular, applying the murder cross reference, defendant had a base offense level of 43. ECF 96, ¶ 27; ECF 62, ¶ 4(a). And, after two deductions for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a), the defendant had a final offense level of 41. ECF 96, ¶¶ 28, 29.

The parties did not stipulate as to Harrison's criminal history. The PSR determined that Harrison's criminal history score was eight, establishing a criminal history category of IV. ECF 96, ¶ 40. Harrison earned five points for his three prior convictions, two of which were drug related. *Id.*, ¶¶ 32-36. Harrison's criminal history score was increased by two points because he committed the offenses while on parole. *Id.* ¶ 37. And, an additional point was added because the criminal activity in this case occurred within two years of defendant's release from prison. *Id.* ¶ 38.

At sentencing on February 21, 1997, Harrison was twenty-four years of age. *See id.* at 1. Defendant reported cocaine use in 1990, but denied ongoing use of illegal drugs. *Id.* ¶ 52. The Guidelines range for Count One was 360 months to life imprisonment, followed by five years of supervised release.

The Court sentenced defendant to a total term of 420 months of imprisonment (35 years), to be followed by five years of supervised release. *See* ECF 69; ECF 70.[5]

Harrison is currently serving his sentence at Hazelton USP. He has a projected release date of March 7, 2028.  *See Find an inmate*, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last accessed June 27, 2023). To date, Harrison has served approximately 85% of his sentence.

Defendant filed a Motion for Compassionate release on May 26, 2021. ECF 81. Chief Judge James K. Bredar denied the motion, citing Harrison's failure to exhaust his administrative remedies. ECF 82.  Thereafter, Harrison filed a petition with the Warden, seeking compassionate release on the basis of rehabilitation, age at the time of the offense, changes in the law, and sentencing disparity. ECF 85-1. This Motion followed on August 12, 2021. ECF 85. The government concedes that as "Petitioner presented his request to the Warden more than 30 days before filing the instant motion, he has met the minimum administrative prerequisite under § 3582(c)(1)(A) for filing the motion." ECF 92 at 10.

As noted, Harrison seeks a reduction of his sentence to time served. *Id.* at 21.  He argues for release based on four grounds:  his rehabilitation; changes in the law; disparity in sentencing; and his youth at the time of the offenses.  ECF 85 at 1.

The government contends that Harrison is ineligible for early release, because his sentence is not disparate, it is within the current Guidelines range, and changes in sentencing law do not mandate his early release. ECF 92 at 10-13. The government also cautions against early release of defendant due to defendant's significant criminal history, the seriousness of the underlying offense, and his disciplinary record while incarcerated. ECF 92 at 13-17.

---

[5] Judge Nickerson issued an Amended Judgment a few days after the sentencing, to correct a clerical error.

Additional facts are discussed, *infra*.

### III. Standard of Review

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. Malone*, 57 F.4th 167, 173 (4th Cir. 2023); *United States v. Bond*, 56 F. 4th 381, 383 (4th Cir. 2023); *United States v. Bethea*, 54 F.4th 826, 831 (4th Cir. 2022); *United States v. Ferguson,* 55 F.4th 262, 267 (4th Cir. 2022); *United States v. Hargrove*, 30 F.4th 189, 194 (4th Cir. 2022); *United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson,* 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *see Jackson*, 952 F.3d at 495.

Congress "broadened" the authority of the courts in 2018, with passage of the FSA. *Malone*, 57 F.4th at 173. Commonly termed the "compassionate release" provision, 18 U.S.C. § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence if "extraordinary and compelling reasons warrant such a reduction." *Hargrove*, 30 F.4th at 194. This provision is an exception to the ordinary rule of finality in regard to a federal sentence. *United States v. Jenkins*, 22 F.4th 162, 169 (4th Cir. 2021).

Section 3582 was first enacted as part of the Sentencing Reform Act of 1984. Originally, it permitted a court to alter a sentence only upon a motion by the Director of the BOP. *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984). Thus, a defendant seeking compassionate release had to rely on the BOP Director for relief. *See Bethea*, 54 F.4th at 831; *see*, *e.g*., *Orlansky v. FCI Miami Warden*, 754 F. App'x 862, 866-67 (11th Cir. 2018); *Jarvis v. Stansberry*, No. 2:08CV230, 2008 WL 5337908, at *1 (E.D. Va. Dec. 18, 2008) (denying compassionate release motion because

§ 3582 "vests absolute discretion" in the BOP).

For many years, the safety valve of § 3582 languished.  The BOP rarely filed motions on an inmate's behalf.  As a result, compassionate release was exceedingly rare.  *See Hearing on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n* 66 (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice) (observing that, on average, only 24 inmates were granted compassionate release per year between 1984 and 2013).

As a result of the enactment of the FSA in December 2018, a federal inmate is now permitted to file a motion for compassionate release directly with the court after exhaustion of administrative remedies.  *See United States v. McCoy*, 981 F.3d 271, 275-76 (4th Cir. 2020). Specifically, pursuant to the 2018 FSA, the Court may reduce a defendant's term of imprisonment "upon motion of the Director of [BOP], *or upon motion of the defendant after the defendant has fully exhausted all administrative rights* to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first.  (Emphasis added).  *Id.*

Once a defendant has exhausted his administrative remedies, or after 30 days have passed from the date on which the warden has received the defendant's request, the defendant may petition a court directly for compassionate release.  *Ferguson*, 55 F.4th at 268; *Jenkins*, 22 F.4th at 169; *United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021); *McCoy*, 981 F.3d at 276.  This constituted a sea change in the law.

But, under 18 U.S.C. § 3582(c)(1)(A), the court may modify the defendant's sentence only if two criteria are met.  *Bethea*, 54 F.4th at 831.  In other words, the analysis consists of "two steps."  *Bond*, 56 F.4th at 383.  And, for a court to award compassionate release, it must conclude that the movant satisfies both criteria.  *Bethea*, 54 F. 4th at 831; *see Hargrove*, 30 F.4th at 194-95.

7

"First, the court must determine the prisoner is eligible for a sentence reduction because he has shown 'extraordinary and compelling reasons' supporting relief." *Bethea*, 54 F.4th at 831 (citation omitted); *see also Bond*, 56 F.4th at 383; *United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021) (per curiam), *cert. denied*, ___ U.S. ___, 142 S. Ct. 383 (2021). If that criteria is met, the court "must then find that release is appropriate under the 18 U.S.C. § 3553(a) sentencing factors, to the extent those factors are applicable." *Bethea*, 54 F.4th at 831; *see also Malone*, 57 F.4th at 174; *Hargrove*, 30 F.4th at 194; *United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021); *Kibble*, 992 F.3d at 330.

Generally, "the district court enjoys broad discretion in conducting a § 3582(c)(1)(A) analysis." *Jenkins*, 22 F.4th at 169. But, the Fourth Circuit has said: "When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court may grant a reduction only if it is 'consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Taylor*, 820 F. App'x 229, 230 (4th Cir. 2020) (per curiam) (citing 18 U.S.C. § 3582(c)(1)(A)).

In U.S.S.G. § 1B1.13, titled "Reduction in Term of Imprisonment under 18 U.S.C. § 3582(c)(1)(A) Policy Statement," the Sentencing Commission addressed the "extraordinary and compelling reasons" that might merit compassionate release. *See McCoy*, 981 F.3d at 276-77.[6] In particular, U.S.S.G. § 1B1.13 provides that on motion by the Director of the BOP, the court may reduce a sentence where warranted by extraordinary or compelling reasons (§ 1B1.13(1)(A)); the defendant is at least 70 years old and has served at least 30 years in prison (§ 1B1.13(1)(B)); the defendant is not a danger to the safety of any other person or to the community (§ 1B1.13(2)); and

---

[6] The Sentencing Commission acted pursuant to 28 U.S.C. § 994(t) (directing Sentencing Commission to "describe what should be extraordinary and compelling reasons for sentence reduction"), as well as 28 U.S.C. § 994(a)(2)(C). *See McCoy*, 981 F.3d at 276.

the reduction is consistent with the policy statement. U.S.S.G. § 1B1.13(3).

The Application Notes to U.S.S.G. § 1B1.13 are expansive and indicate that compassionate release may be based on circumstances involving illness, declining health, age, exceptional family circumstances, as well as "other reasons." U.S.S.G. § 1B1.13 App. Notes 1(A)-(D). Application Note 1(D), titled "Other Reasons," permits the court to reduce a sentence where, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 App. Note 1(D). This is the "so-called, 'catch-all' category." *McCoy*, 981 F.3d at 276.

However, as the Fourth Circuit has recognized, there is no applicable policy statement for a motion filed by a defendant under § 3582(c)(1)(A). *See*, *e.g.*, *Malone*, 57 F.4th at 174; *McCoy*, 981 F.3d at 276. Of significance here, the policy statement in U.S.S.G. § 1B1.13 was issued in 2006 and was last updated in November 2018, *prior* to the enactment of the FSA. It is *only* "directed at BOP requests for sentence reductions." *McCoy*, 981 F.3d at 276 (citing U.S.S.G. § 1B1.13). Thus, "[b]y its plain terms. . . § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)." *McCoy*, 981 F.3d at 282; *see also Jenkins*, 22 F.4th at 169; *United States v. Brooker,* 976 F.3d 228, 235-36 (2nd Cir. 2020); *United States v. Jones*, 980 F.3d 1098, 1100-02 (6th Cir. 2020); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020).

Notably, "Section 3582(c)(1)(A)(i) does not attempt to define the 'extraordinary and compelling reasons' that might merit compassionate release." *McCoy*, 981 F.3d at 276. And, because there is currently no Sentencing Commission policy statement applicable to a defendant's compassionate release motion, "district courts need not conform, under § 3582(c)(1)(A)'s consistency requirement, to [U.S.S.G.] § 1B1.13 in determining whether there exist 'extraordinary

and compelling reasons' for a sentence reduction." *McCoy*, 981 F.3d at 283; *see also Hargrove*, 30 F.4th at 194-95; *United States v. Brice*, 2022 WL 3715086, at *1 (4th Cir. Aug. 29, 2022) (per curiam). Although there are currently no applicable policy statements for the Sentencing Commission that are applicable to compassionate release., U.S.S.G. § 1B1.13 "remains helpful guidance . . . ." *McCoy*, 981 F.3d at 282 n.7; *see Hargrove*, 30 F.4th at 194. Consequently, district courts are "'empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.'" *McCoy*, 981 F.3d at 284 (citation omitted); *see also Jenkins*, 22 F.4th at 170.

"The factors applicable to the determination of what circumstances can constitute an extraordinary and compelling reason for release from prison are complex and not easily summarized." *Hargrove*, 30 F.4th at 197. But, "successful rehabilitation efforts can be considered" in regard to the analysis of extraordinary and compelling reasons. *United States v. Harris*, 2022 WL 636627, at *1 (4th Cir. Mar. 4, 2022) (per curiam); *see United States v. Gutierrez*, 2023 WL 245001, at *4 (4th Cir. Jan. 18, 2023) (stating that, in considering a compassionate release motion, the district court erred by failing to address the defendant's evidence of rehabilitation). Nevertheless, "rehabilitation alone cannot serve as a basis for compassionate release." *United States v. Davis*, 2022 WL 127900, at *1 (4th Cir. Jan. 13, 2022) (per curiam); *see McCoy*, 981 F.3d at 286 n.9; *Harris*, 2022 WL 636627, at *1; 28 U.S.C. § 994(t). Moreover, "[i]n deciding a motion for compassionate release, the district court is confined to the evidence presented." *Bethea*, 54 F.4th at 833 n.2; *see also United States v. Osman*, 2022 WL 485183, at *1 (4th Cir. Feb. 17, 2022).

The Guidelines "are not directly applicable to defendant-filed motions" under § 3582(c). *Jenkins*, 22 F.4th at 169. However, "the court may consider these guidelines in defining what

should be considered an 'extraordinary and compelling circumstance' warranting a sentence reduction." *Id.* (citing U.S.S.G. § 1B1.13); *see High*, 997 F.3d at 187.

Of relevance here, the Supreme Court decided *Concepcion v. United States*, ___ U.S. ___, 142 S. Ct. 2389 (2022), on June 27, 2022. In that case, the Supreme Court said, in the context of § 404(b) of the First Step Act, that "a district court cannot . . . recalculate a movant's benchmark Guidelines range in any way other than to reflect the retroactive application of the Fair Sentencing Act [of 2010] . . . ." *Id.* at 2402 n.6. The Court explained that the "Guidelines range 'anchor[s]' the sentencing proceeding . . . . The district court may then consider postsentencing conduct or nonretroactive changes . . . with the properly calculated Guidelines range as the benchmark." *Id.* (first alteration in original; internal citation omitted); *see also United States v. Troy*, 64 F.4th 177, 183-84 (4th Cir. 2023).

To be sure, the district court is obligated to consider all non-frivolous arguments for sentence reduction based on intervening changes in the law and factual developments. *Concepcion*, 142 S. Ct. at 2396; *Troy,* 64 F.4th at 184; *United States v. Reed*, 58 F.4th 816, 822 (4th Cir. 2023); *Brice*, 2022 WL 3715086, at *2. However, such changes do not warrant a recalculation of the Guidelines. *Troy,* 64 F.4th at 184.

As the movant, the defendant bears the burden of establishing that he is entitled to a sentence reduction under 18 U.S.C. § 3582. *See*, *e.g.*, *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013); *United States v. Edwards*, 451 F. Supp. 3d 562, 565 (W.D. Va. 2020). And, compassionate release is a "rare" remedy. *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019); *see Chambliss*, 948 F.3d at 693-94; *United States v. Mangarella*, FDW-06-151, 2020 WL 1291835, at *2-3 (W.D. N.C. Mar. 16, 2020).

As explained, even if the defendant establishes an extraordinary and compelling reason that renders him eligible for a sentence reduction, that does not end the inquiry. The second step requires the court to consider the factors under 18 U.S.C. § 3553(a) to determine whether, in its discretion, a reduction of sentence is appropriate. *See Dillon v. United States*, 560 U.S. 817, 826-27 (2010); *United States v. Mangarella*, 57 F.4th 197, 200, 203 (4th Cir. 2023); *Malone*, 57 F.4th at 174; *Bethea*, 54 F.4th at 833; *Hargrove*, 30 F.4th at 195; *High*, 997 F.3d at 186; *Martin*, 916 F.3d at 397; *see also United States v. Jones*, 2022 WL 2303960, at *1 (4th Cir. June 27, 2022) (per curiam) (noting that "a court need not explicitly make findings on extraordinary and compelling reasons where consideration of the § 3553(a) factors counsels against release"); *United States v. Butts*, 2021 WL 3929349, at *2 (4th Cir. Sept. 2, 2021) (per curiam) (noting that, even if the district court finds extraordinary and compelling circumstances, it must consider the § 3553(a) factors to the extent applicable in exercising its discretion); *Kibble*, 992 F.3d at 329-30 (noting that district court must consider § 3553(a) factors when considering a motion to reduce sentence under § 3582(c)(1)(A) and district court enjoys broad discretion in conducting this analysis); *United States v. Trotman*, 829 F. App'x 607, 608 (4th Cir. 2020) (per curiam) (recognizing that, when considering a motion to reduce sentence under § 3582(c)(1)(A), the court must consider the sentencing factors under § 3553(a), to the extent applicable); *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020) (district court must give due consideration to the § 3553(a) factors).

As the Fourth Circuit has observed "'many case-specific facts fit under the broad umbrella of the Section 3553(a) factors.'" *Bond*, 56 F.4th at 384 (quoting *United States v. Jackson*, 952 F.3d 492, 500 (4th Cir. 2020)). And, in weighing the § 3553(a) factors, the court may consider the terms of a plea bargain. *Bond*, 56 F.4th at 384-85.

Of relevance, "[a] district court need not provide an exhaustive explanation analyzing every § 3553(a) factor," nor is it "required to address each of a defendant's arguments when it considers a motion for compassionate release." *Jenkins*, 22 F.4th at 170; *see Chavez-Mena v. United States*, ___ U.S. ___, 138 S. Ct. 1959 (2018); *High*, 997 F.3d at 187.   But, a district court abuses its discretion when it "act[s] arbitrarily or irrationally," "fail[s] to consider judicially recognized factors constraining its exercise of discretion," "relie[s] on erroneous factual or legal premises," or "commit[s] an error of law." *High*, 997 F.3d at 187 (internal quotation marks omitted); *see Jenkins*, 22 F.4th at 167.   And, "'the record as a whole'" must demonstrate that the judge considered the parties' contentions, and had "'a reasoned basis'" for the exercise of his or her discretion. *Malone*, 57 F.4th at 176 (citations omitted); *see also United States v. Puzey*, 2023 WL 2985127, at *2 (4th Cir. Apr. 18, 2023) (per curiam).

Moreover, where appropriate, the district court "must account not only for the circumstances at the time of the original offense but also for significant post-sentencing developments." *Mangarella*, 57 F.4th at 203; *see Martin*, 916 F.3d at 397; *Kibble*, 992 F.3d at 334 n. 3.   That said, "[h]ow much explanation is 'enough' depends on the complexity of a given case." *Gutierrez*, 2023 WL 245001, at *3; *see United States v. McDonald*, 986 F.3d 402, 412 (4th Cir. 2021).

Notably, "it weighs against an abuse of discretion—and is viewed as 'significant'—when the same judge who sentenced the defendant rules on the compassionate release motion." *Bethea*, 54 F.4th at 834; *see Gutierrez*, 2023 WL 245001, at *5; *Hargrove*, 30 F.4th at 200; *High*, 997 F.3d at 189.   Moreover, "the district court is less likely to have abused its discretion if it considered arguments in opposition to its ultimate decision." *Bethea*, 54 F.4th at 834; *see also High*, 997 F.3d at 189; *Kibble*, 992 F.3d at 332.

In any event, "the court must provide an explanation sufficient 'to allow for meaningful appellate review' in light of the particular circumstances of the case." *United States v. Cohen*, 2022 WL 2314300, at *1 (4th Cir. June 28, 2022) (per curiam) (quoting *High*, 997 F.3d at 190). And, "when a defendant 'present[s] a significant amount of post-sentencing mitigation evidence, . . . a more robust and detailed explanation [is] required.'" *Cohen*, 2022 WL 2314302, at *1 (quoting *High*, 997 F.3d at 190) (alterations in *Cohen*). In doing so, "a district court is permitted to add to its original, sentencing-phase consideration of the § 3553(a) factors when explaining its compassionate release ruling." *Bethea*, 54 F.4th at 834; *see Kibble*, 992 F.3d at 332.

## IV.  Discussion

### A.

Harrison argues that extraordinary and compelling circumstances warrant his compassionate release. He asserts that his sentence is disparate and "draconian." ECF 85 at 20. He also argues that his rehabilitative efforts and age at the time of the offense warrant early release. *Id.* at 1.

The severity of a defendant's sentence may qualify as an extraordinary and compelling reason for compassionate release. *See McCoy*, 981 F.3d at 286 ("[T]he district courts permissibly treated as 'extraordinary and compelling reasons' for compassionate release the severity of the defendants' [] sentences[.]"); *see also United States v. Kratsas*, DKC-92-0208, 2021 WL 242501, at *4 (D. Md. Jan. 25, 2021). Therefore, the Court shall consider defendant's request on this basis.

The United States Sentencing Commission is an agency that "Congress has tasked with promulgating 'guidelines . . . for use of a sentencing court in determining the sentence to be imposed in a criminal case.'" *United States v. Furlow*, 928 F.3d 311, 314 n.1 (4th Cir. 2019) (quoting 28 U.S.C. § 994(a)(1)). To be sure, the sentencing Guidelines are merely advisory, not

mandatory. *See, e.g.*, *Rita v. United States*, 551 U.S. 338, 361-62 (2007); *United States v. Booker*, 543 U.S. 220, 260-62 (2005). But, it is equally clear that the sentencing Guidelines are the "foundation of federal sentencing decisions." *United States v. Hughes*, ___ U.S. ___, 138 S. Ct. 1765, 1775 (2018). Indeed, the sentencing Guidelines have been described as "the lodestone of sentencing," *Peugh v. United States*, 569 U.S. 530, 544 (2013), and as the "starting point" in the effort of a judge to fashion a reasonable sentence. *Freeman v. United States*, 564 U.S. 522, 529 (2011); *see Molina-Martinez v. United States*, 578 U.S. 189, 200 (2016). Because of the "central role in sentencing" that attaches to the advisory sentencing Guidelines, an "error related to the guidelines can be particularly serious." *Molina-Martinez*, 578 U.S. at 199; *see United States v. Winbush*, 922 F.3d 227, 231 (4th Cir. 2019); *United States v. Feldman*, 793 F. App'x. 170, 174 (4th Cir. 2019); *United States v. Carthorne*, 878 F.3d 458, 469 (4th Cir. 2017).

When defendant was sentenced, his Guidelines range was 360 months to life. ECF 96, ¶ 42. At the time, the Guidelines were mandatory, not advisory. *See Booker*, 543 U.S. 221. Judge Nickerson imposed a 420-month sentence, which was within the Guidelines. *See* ECF 70. Certainly, if Judge Nickerson thought the Guidelines were too harsh, he at least would have sentenced defendant to a term of imprisonment at the bottom of the Guidelines. Instead, the sentence was 60 months above the bottom of the Guidelines.

Harrison contends that the Supreme Court's decisions in *Apprendi* v. *New Jersey*, 530 U.S. 466 (2000), and *Alleyne* v. *United States*, 570 U.S. 99 (2013), justify a reduction in his sentence. ECF 85 at 17-18. He argues that his "minimum sentence was increased based on facts that were never charged, or tried to a jury." *Id.* at 18. Specifically, he references a "failure to charge drug quantity in the indictment." ECF 85 at 18. But, the drug quantity was of no moment as to the Guidelines, because Harrison's Guidelines for the drug offense (Racketeering Act Four) were not

the basis of the final Guidelines calculation. Instead, defendant's Guidelines range was based on the murder that was the subject of Racketeering Act Three. *See* ECF 96, ¶ 27.

Nevertheless, Harrison's sentence is arguably disparate when compared to at least some defendants sentenced more recently for similar conduct. In *United States v. Bryant*, CCB-95-202, 2020 WL 2085471 (D. Md. Apr. 30, 2020), Judge Blake observed, *id.* at *5 n.8: "According to statistics released by the United States Sentencing Commission for fiscal year 2018, the national average sentence for murder was 291 months, and the Fourth Circuit average was 327 months." (citing *United States v. Redd*, 444 F. Supp. 3d 717, 728 (E.D. Va. 2020), in turn citing United States Sentencing Commission, *Statistical Information Packet, Fiscal Year 2018, Fourth Circuit*, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2018/4c18.pdf), *aff'd, McCoy*, 981 F.3d 271. For example, in *United States v. Floyd*, CCB-16-597, after a 25-day trial, Floyd was convicted of a racketeering conspiracy that included murders and drug trafficking. Floyd was not the shooter, however. Although his offense level and criminal history category called for a life sentence, Judge Blake imposed a total sentence of 360 months of imprisonment. *Id.*, ECF 691.

The case of *United States v. Antoine*, PWG-19-140, is also illustrative. There, the defendant was involved in a drug trafficking organization in Baltimore, and confessed to the intentional shooting and killing of an individual in connection with the drug conspiracy. *See id.*, ECF 349 at 9-10. Antoine entered a plea of guilty to one count of conspiracy to distribute controlled substances and one count of discharging a firearm resulting in death during and in relation to a drug trafficking crime. *Id*. Antoine was the shooter. But, pursuant to Fed. R. Crim. P. 11(c)(1)(C), the government agreed to a term of imprisonment ranging between 20 and 25 years. *Id*. at 6. And, Antoine was ultimately sentenced to 22.5 years of imprisonment. *See id.,* ECF 465.

16

Other judges in the District of Maryland and elsewhere have reduced pre-*Booker* lengthy sentences for defendants whose offenses included participation in a drug-related killing or a drug conspiracy that involved murder. *See, e.g.*, *United States v. Russo,* ___F. Supp. 3d___, 2022 WL 17247005, at *11 (E.D.N.Y. Nov. 28, 2022) (reducing life sentences to 35 years for one defendant incarcerated for 29 years and another incarcerated for 32 years); *United States v. Fenner*, RDB-95-095, 2022 WL 1062021, at *7 (D. Md. Apr. 8, 2022) and ECF 235 (reducing 55-year sentence to 27 years imprisonment); *United States v. Gray*, CCB-95-364, 2021 WL 1856649, at *1 (D. Md. May 10, 2021) (reducing life sentence to 27 years of imprisonment); *United States v. Hill*, JKB-96-00399, 2020 WL 2089379, at *2 (D. Md. Apr. 30, 2020) (reducing sentence from 480 months to 330 months); *United States v. Cruz*, JCH-94-112, 2021 WL 1326851, at *15 (D. Conn. Apr. 9, 2021) (reducing life sentence to time-served after about 27 years); *United States v. Perez*, JBA-02-7, 2021 WL 837425, at *6 (D. Conn. Mar. 4, 2021) (reducing life sentence to time-served after 23 years); *see also United States v. Stockton,* ELH-99-352, 2021 WL 1060347, at *15 (D. Md. Mar. 17, 2021) (reducing a 40 year sentence to approximately 22 years of imprisonment); *Carter v. United States*, ELH-00-0100, 2020 WL 1914766, at *9 (D. Md. Apr. 17, 2020) (reducing life sentence plus 30 years to 35 years of imprisonment); *United States v. Cheese*, ELH-98-259, 2020 WL 3618987, at *10 (D. Md. July 2, 2020) (reducing life sentence to 28 years of imprisonment); *Brown v. United States*, ELH-00-0100, 2020 WL 1248950, at *10 (D. Md. Mar. 16, 2020) (reducing life sentence plus 30 years to 40 years of imprisonment for defendant who led a violent drug trafficking organization and committed a murder in furtherance of the drug conspiracy). But, *see United States v. Whisonant*, ELH-17-191 (involving several defendants and a drug-related murder; one defendant initially received a sentence of 360 months, another defendant received a sentence of 420 months, and another defendant received a sentence of 480 months; ECF 163, ECF

180, ECF 184; the 360 month sentence was later reduced to 295 months, pursuant to a motion for compassionate release, ECF 336).

To be sure, there are important distinctions in the various cases. That said, the cases provide guidance. I conclude that Harrison's lengthy sentence qualifies as an extraordinary and compelling reason that renders him eligible for compassionate release. *See McCoy*, 981 F.3d at 286. However, this determination does not end the inquiry.

**B.**

Even when a court finds extraordinary and compelling reasons for compassionate release, relief is warranted under 18 U.S.C. § 3582(c)(1)(A) only if appropriate in light of factors set forth in 18 U.S.C. § 3553(a). *See High*, 997 F.3d at 186; *see also United States v. Butts*, 2021 WL 3929349, at *2 (4th Cir. Sept. 2, 2021) (per curiam). These factors include: (1) the nature of the offense and the defendant's characteristics; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; (3) the kinds of sentences available and the applicable Guidelines range; (4) any pertinent Commission policy statements; (5) the need to avoid unwarranted sentence disparities; and (6) the need to provide restitution to victims. *High*, 997 F.3d at 186.

Rehabilitation efforts should be considered in regard to a motion for compassionate release. *See Lancaster*, 997 F.3d at 175 ("And in considering the § 3553(a) factors, the court can take into account a defendant's conduct after his initial sentencing."); *McDonald*, 986 F.3d at 410-12 (noting that on a motion to reduce sentence under the First Step Act, the district court must consider defendant's post-sentencing conduct); *United States v. Randall*, 837 Fed. App'x 1008, 1009 (4th Cir. 2021) ("[A] district court must provide an individualized explanation for denying a sentence reduction motion under the First Step Act when the defendant presents evidence of his post-

sentencing rehabilitation."); *United States v. Rudisill*, 834 Fed. App'x 827, 829 (4th Cir. 2021) (finding district judge abused his discretion in denying motion under the First Step Act without addressing defendant's post-sentencing conduct).

Courts place significant weight on a defendant's post-sentencing conduct because it "provides the most up-to-date picture of [his] 'history and characteristics.'" *Pepper v. United States*, 562 U.S. 476, 492 (2011) (citing 18 U.S.C. § 3553(a)(1)). The court must "at least weigh the [defendant's] conduct in the years since the initial sentencing." *McDonald*, 986 F.3d at 412; *see United States v. Martin*, 916 F.3d 389, 397 (4th Cir. 2019) (requiring an "individualized explanation" as to rehabilitative efforts). A defendant's behavior while in BOP custody is an important indicator of whether he remains a danger to the community. *See* 18 U.S.C. § 3582(c)(1)(A)(ii).

Harrison has engaged in rehabilitative measures. His efforts include completing a laundry list of courses that cover a broad range of topics such as plumbing, history, and parenting. ECF 85 at 8; *see* ECF 85-2. And, he has maintained employment with "good work evaluations." ECF 85 at 8. Harrison's efforts at rehabilitation are "a significant factor" in determining whether a sentence reduction is warranted. *United States v. Ogun*, ___F. Supp. 3d___, 2023 WL 2207114, at *10 (E.D. Va. Feb. 24, 2023). But, rehabilitation alone does not warrant a defendant's immediate release. *Davis*, 2022 WL 127900, at *1.

Notably, Harrison has had twenty-one disciplinary incidents during his incarceration. *See* ECF 92 at 16; ECF 92-1. And, some of these infractions are serious: they include assault, fighting, and possession of a dangerous weapon. *See* ECF 92-1. However, the disciplinary records provided by the government show that, as of January 10, 2022, Harrison's last infraction occurred almost a decade earlier, on December 23, 2014. *Id.* at 1. *See United States v. Rogers*, RDB-92-0154, 2021

WL 4641177, at *4 (D. Md. Oct. 7, 2021) (noting that, in the preceding decade, defendant had only minor infractions).

In addition, I am mindful that defendant's incarceration in the midst of a global pandemic has "sufficiently increased the severity of the sentence beyond what was originally anticipated such that the purposes of sentencing are fully met even with the proposed reduction*." United States v. Green*, TDC-10-761, 2020 WL 2992855, at *4 (D. Md. June 4, 2020); *see also United States v. Park*, No. 16-cr-00473, 2020 WL 1970603, at *5, 456 F. Supp. 3d 557 (S.D.N.Y. Apr. 24, 2020) (noting that a sentence "that was sufficient but no greater than necessary" may now, in light of COVID-19, become "one immeasurably greater than necessary").

Defendant's age also weighs in his favor. He is now fifty years old. *See Find an inmate, supra,* https://www.bop.gov/inmateloc/.   Defendant states that as he has aged, he "knows how to better conduct himself." ECF 85 at 21.   "Recent analysis from the Bureau of Justice Statistics considering the recidivism rates of released prisoners in 30 states (including [Maryland]) from 2005 to 2010 supported the Commission's conclusion, finding decreased recidivism rates as prisoners age.[] These statistics suggest that **past fifty years old there is a significantly lower rate of recidivism.**" *United States v. Payton*, 754 F.3d 375, 377 (6th Cir. 2014) (emphasis added); *see also United States v. Howard*, 773 F.3d 519, 533 (4th Cir. 2014) ("[S]tudies demonstrate that the risk of recidivism is inversely related to an inmate's age.").

District courts in the Fourth Circuit routinely consider a defendant's age as it relates to recidivism when balancing the § 3553(a) factors in a motion for compassionate release. *See, e.g., United States v. Hill*, ___F. Supp. 3d___, 2023 WL 35211, at *9 (E.D. Va. Jan. 4, 2023) (age 59); *United States v. Mills*, DCN-97-815, DCN-98-786, 2022 WL 206074, at *6 (D.S.C. Jan. 24, 2022) (age 57); *United States v. Epstein*, JKB-17-453, 2020 WL 4339325, at *2 (D. Md. July 28, 2020)

(age 60). Given Harrison's age, he is less susceptible to the risk of recidivism, which weighs in favor of early release. *See* ECF 96 at 1.

The defendant's age at the time of the offense also weighs in his favor. In the Plea Agreement, Harrison admitted the criminal activity occurred between 1990 and 1995. ECF 62, ¶ 4(a). Given that Harrison was born in late 1972, he was as young as 18 and as old as 23 while engaged in the criminal activity underlying the instant offenses. *See* ECF 96 at 1. The murder occurred on October 5, 1995. At that time, defendant was 22 years old. *See McCoy*, 981 F.3d at 286 (". . . in determining that release was appropriate for all of the defendants, the courts focused on the defendants' relative youth – from 19 to 24 years old – at the time of their offenses, a factor that many courts have found relevant under § 3582(c)(1)(A)(i). . . .") (internal citations omitted); *see, also e.g., United States v. Gantt,* EFM-10-10175, 2023 WL 2140151, at *3, 6 (D. Kan. Feb. 21, 2023) (considering defendant's age of 21 at time of conviction weighing in favor of release); *United States v. Newton*, JLT-94-5036, 2022 WL 3029332, at *4 (E.D. Cal. Aug. 1, 2022) ("Courts also consider factors such as the defendant's age at present and at the time of conviction, evidence of rehabilitation, and the percentage of the original sentence that a defendant has already served.") (citations omitted); *United States v. Robles*, 553 F.Supp.3d 172, 185 (S.D.N.Y. 2021) ("[G]iven Robles's youth [(i.e., age 23)] at the time of his offense, it is conjecture to forecast that society would need protection from him three and a half decades later."); *United States v. Lee*, EEF-04-11, 2021 WL 3129243, at *4 (E.D. La. July 23, 2021) (reducing defendant's sentence, in part, because he "was only 23 years old at the time of the carjackings"); *United States v. Maumau*, TC-08-758, 2020 WL 806121, at *5, 7 (D. Utah Feb. 18, 2020) (noting defendant's age of 24 at sentencing, in combination with other factors, when granting compassionate release).

Harrison has been in custody since April 1996. *See* ECF 96 at 1 ("Date of Arrest: April 17, 1996 (Appeared on a Writ)"). As noted, he is scheduled to be released on or about March 7, 2028. Therefore, he has served approximately 85% of his sentence, inclusive of good time credits. *See United States v. Cochran*, LA-01-108, 2021 WL 807252, at *8 (E.D. Wis. Mar. 3, 2021) ("Had defendant brought this motion after serving a mere fraction of his sentence, I might have been persuaded by the government's argument. At this point, however, defendant has served about 90% of his sentence (accounting for good time).") (citing *United States v. Kirschner*, 472 F. Supp. 3d 482, 483 (S.D. Ind. 2020)).

But, as the government suggests, ECF 92 at 13-14, 16, the Court cannot overlook that defendant, despite engaging in the instant criminal activity at such a young age, already had been convicted of possession with intent to distribute heroin and cocaine, a handgun violation, as well as a second drug offense for possession with intent to distribute heroin. *See* ECF 96, ¶¶ 32-35. Significantly, Harrison committed the instant offense shortly after his prior convictions, and while he was still on parole. *Id.* ¶¶ 37, 38.

Moreover, Harrison's crime of conviction was extremely serious; he took the life of another person. ECF 62, ¶ 4(a). He also had a leadership role in a major drug trafficking organization that sold approximately $10,000 of heroin a day. *See* ECF 92 at 15; ECF 62, ¶ 4(a). Such conduct was in complete disregard of the safety of others. Moreover, the conduct at issue occurred over a five-year period. *Id.*

The First Step Act "does not constrain the Court to decide between immediate release or no reduction at all, and instead leaves the Court discretion in its evaluation of the appropriate sentence once it finds 'extraordinary and compelling reasons.'" *United States v. Braxton*, JKB-09-478, 2020 WL 4748536, at *5 (D. Md. Aug. 17, 2020). Accordingly, the Court's decision need

not be confined either to immediate release or leaving the existing sentence intact. The statutory text of the First Step Act allows courts to "reduce the term of imprisonment" upon a finding of "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A).

Numerous district courts in this Circuit and elsewhere have granted sentence reductions without immediate release. *See, e.g.*, *United States v. Johnson*, RDB-07-0153, 2020 WL 6063733, at *5 (D. Md. Oct. 14, 2020) (reducing sentence from 360 months to 300 months); *Braxton*, 2020 WL 4748536, at *5 (reducing sentence from 246 months to 168 months); *United States v. Marks*, 455 F. Supp. 3d 17, 37-38 (W.D.N.Y. 2020) (reducing sentence from 40 years to 20 years); *United States v. Arey*, Crim. No. 5:05-00029, 461 F.Supp.3d 343, 2020 WL 2464796 (W.D. Va. May 13, 2020) (reducing sentence but denying immediate release); *United States v. Day*, 474 F. Supp. 3d 790 (E.D. Va. 2020) (same); see *also United States v. Zullo*, 976 F.3d 228, 327 (2d Cir. 2020) ("It bears remembering that compassionate release is a misnomer. 18 U.S.C. § 3582(c)(1)(A) in fact speaks of sentence reductions. A district court could, for instance, reduce but not eliminate a defendant's prison sentence . . .").

As I see it, the period of incarceration that Harrison has served to date is not sufficient to warrant his immediate release. In particular, this was a very serious case, involving a drug-related murder, for which severe punishment is justified. However, in view of the foregoing, I conclude that the factors under 18 U.S.C. § 3553(a) weigh in favor of reducing Harrison's sentence to 366 months of imprisonment, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i),

## V. Conclusion

For the reasons set forth above, I shall grant the Motion (ECF 85), in part. An amended judgment shall issue.

An Order follows, consistent with this Memorandum Opinion.

Date: July 25, 2023

_____/s/_____
Ellen L. Hollander
United States District Judge